# In the United States Court of Federal Claims

No. 10-546C
(Filed: December 18, 2014)

| | |
|---|---|
| MICHAEL ALAN CROOKER, | ) |
| | ) |
| Plaintiff, | )  Unjust Conviction and Imprisonment; 28 |
| | )  U.S.C. § 1495; 28 U.S.C. § 2513; |
| | )  Damages; Sentencing Credit; 18 U.S.C. § |
| v. | )  3585; Pre-Trial Detention |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

*John Hardin Young*, Sandler Reiff Young & Lamb, P.C., Washington, D.C., for plaintiff.

*Steven M. Mager*, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington D.C., for defendant.  With him were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, and *Sophia Y. Kil*, Litigation Division, Office of Chief Counsel, Bureau of Alcohol, Tobacco, Firearms and Explosives.

## OPINION AND ORDER

**KAPLAN, Judge.**

Pursuant to 28 U.S.C. §§ 1495 and 2513 (collectively, the "unjust conviction statutes"), plaintiff Michael Alan Crooker has filed a complaint seeking damages to compensate him for his conviction and imprisonment on a firearms offense for which he was subsequently found not guilty.  Mr. Crooker requests compensation for the 2,273 days in total that he was imprisoned following his arrest and until his conviction was reversed.  He seeks the maximum amount allowable under the statute for the length of his incarceration, which amounts to $311,369.86.[1]

---

[1] Section 2513 provides a damages cap at $50,000 per year of incarceration for plaintiffs not sentenced to death.  Prorated daily, this $50,000-per-year statutory maximum equals $136.99 per day.  Thus, 2,273 days, at $136.99 per day, equals $311,369.86.

The government agrees that Mr. Crooker has met the prerequisites to establish the government's liability under the statute by producing a certificate of innocence issued by the United States District Court for the District of Massachusetts.  See 28 U.S.C. § 2513(b).  Nonetheless, it opposes any award of damages to Mr. Crooker on several interrelated bases all arising out of the fact that after his unjust conviction was reversed, he (1) pleaded guilty to committing other offenses, including one he committed prior to his arrest on the firearms charge and (2) received a credit against the sentence imposed for those other offenses based on the time he served in connection with the firearms offense.

Pending before the Court are the parties' cross motions for summary judgment on the issue of Mr. Crooker's entitlement to damages.  For the reasons set forth below, Mr. Crooker's motion is **GRANTED IN PART** and **DENIED IN PART**, and the government's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I.     Mr. Crooker's Arrest

The events that ultimately led to this lawsuit began in April 2004, when the Postal Inspection Service received information suggesting that Mr. Crooker, who was then in the business of selling chemicals over the internet, was sending hazardous materials to buyers through the mail, in violation of Postal Service regulations.  United States v. Crooker, 415 F. Supp. 2d 28, 29 (D. Mass. 2006).  Because of his lengthy criminal record,[2] Mr. Crooker was "'well known' in Western Massachusetts law enforcement circles" so that his "name immediately raised a red flag" to the postal inspector.  Id.  The postal inspector asked the postmaster at Mr. Crooker's local post office to hold any package that Mr. Crooker attempted to mail.  Id.  On June 7, 2004, Mr. Crooker delivered a large package to the post office and deposited it for mailing.  Id.  As instructed, the postmaster set Mr. Crooker's parcel aside and notified the postal inspector.  Id. at 30.

The postal inspector x-rayed the package and concluded that it contained a firearm, which, as a convicted felon, Mr. Crooker could not lawfully possess.  Id. at 30.  After securing a warrant, the postal inspector opened the package.  Id.  Contrary to his expectation, the package contained an air rifle, not a "firearm" within the meaning of federal law.  United States v.

---

[2] Mr. Crooker's criminal record prior to the events at issue in this case included convictions beginning at age sixteen for violent and non-violent felonies, for which he served substantial prison time.  Def.'s Opp'n to Pl.'s Supplemental Mem. in Supp. of Mot. for Summ. J. & Def.'s Cross Mot. [hereinafter Def.'s Opp'n & Cross Mot.] Exs. 3, 4, ECF No. 55.  Aside from his incarceration for the unjust conviction forming the basis for this lawsuit, Mr. Crooker's most recent prison sentence was from 1992 to 2000 for offenses that included conspiracy to possess firearms by a convicted felon, witness tampering, and thirty-nine counts of filing false IRS refund claims.  Id. at 1.  Thereafter, Mr. Crooker was on supervised release from January 21, 2000 to January 20, 2003.  Id.  During most of this time period Mr. Crooker was employed as an airport shuttle bus driver for a rental car company, a position he held until October 2003.  Compl. ¶ 35.

Crooker, 608 F.3d 94, 96 (1st Cir. 2010).[3]  Id.  The package, however, also contained a metal cylinder.  Id. at 95.  Although the cylinder was designed to muffle the sound of the airgun, it was also capable of being adapted to silence a firearm.  Id.  Because a "firearm silencer" falls within the statutory definition of a "firearm," 18 U.S.C. § 921(a)(3)(C), the government arranged a controlled delivery of the package to its recipient in Ohio, and on that same day, June 23, 2004, authorities arrested Mr. Crooker and charged him with transporting a firearm after being convicted of a felony under § 922(g) ("the firearms charge").  Crooker, 608 F.3d at 96.

On the day of Mr. Crooker's arrest, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") searched Mr. Crooker's apartment, where they found chemicals, white powder, and other suspicious materials.  Crooker, 608 F.3d at 95; Def.'s Reply to Pl.'s 2d Supplemental Br. App. 38-39, ECF No. 92.  Mr. Crooker was eventually indicted on charges related to the possession of these materials.  Id. App. 79-88.  But that indictment, discussed below, did not issue until December 2007.  Id.  In the meantime, Mr. Crooker was imprisoned on the firearms charge, first in pre-trial detention, and later as a result of his conviction on those charges.

## II.    The Unjust Conviction

At Mr. Crooker's trial, the government proffered expert testimony to demonstrate that the metal cylinder found in Mr. Crooker's package constituted a "firearm silencer" or a "firearm muffler" within the meaning of the statute, which defines those terms as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."  18 U.S.C. § 921(a)(24); Crooker, 608 F.3d at 96.  The government's expert testified that the airgun silencer could be adapted for the purpose of muffling the sound of an ordinary firearm.  Id.  Mr. Crooker argued against the government's construction of the statute, contending that the statute covered only devices "designed or intended to be used" with a firearm.  Id.  Ultimately, however, the court instructed the jury that "the government need not prove Mr. Crooker or anyone else actually ever used [the device] as a firearm silencer or ever intended it to be used as a firearm silencer."  Id.  On July 11, 2006, the jury convicted Mr. Crooker, and he was sentenced to prison for 262 months.  Pl.'s Mem. in Supp. of Mot. for Summ. J. [hereinafter Pl.'s Mem.] 2, ECF No. 50.

Mr. Crooker appealed his conviction, arguing that the jury instructions mischaracterized the law.  Crooker, 608 F.3d at 94.  The United States Court of Appeals for the First Circuit agreed.  Id. at 97.  It held that the jury instruction was inconsistent with the proper, literal meaning of the statute, which covers only devices designed or intended to be used with a firearm and not those merely capable of such use.  Id. at 97.  Thus, because the jury did not find that Mr. Crooker intended to use the airgun silencer with a firearm, the court of appeals concluded, he was not guilty of any illegal conduct under the statute.  Id.  A Certificate of Innocence was issued

---

[3] Title 18, section 921(a)(3)(A) defines "firearm," in pertinent part, as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."

by the United States District Court for the District of Massachusetts on November 20, 2010. Pl.'s Mem. 2.

## III.    The Threat and Toxin Charges

On September 13, 2010, immediately after Mr. Crooker was released from prison based on the reversal of his firearms conviction, he was taken into custody by the Bureau of Prisons on the basis of the charges contained in an indictment that had issued almost three years earlier, on December 4, 2007. Pl.'s Mem. 2-3. The charges in that indictment were based on the materials seized from Mr. Crooker's apartment in the June 2004 search as well as conduct that occurred shortly thereafter during Mr. Crooker's pre-trial detention on the firearms charge. Def.'s Opp'n & Cross Mot. Ex. 6. Specifically, according to the indictment, in July 2004, about a month after he was arrested on the firearms charge, Mr. Crooker mailed the U.S. Attorney's office a threat to use ricin against government officials. Id. The indictment consisted of nine criminal counts, including mailing a threatening communication and possession or production of a toxin for use as a weapon ("threat and toxin charges"). Id.

In a plea agreement dated March 24, 2011, Mr. Crooker pleaded guilty to mailing a threatening communication and possession of a toxin without registration. Def.'s Opp'n & Cross Mot. Ex. 7. He also agreed to dismiss specific civil lawsuits he had filed, which were listed in an exhibit to the plea agreement, and any other lawsuits that were "connected to the investigation and prosecution of [the firearms case] or this case." [4] Id. The parties agreed to jointly recommend a sentence of 180 months of incarceration and 36 months of supervised release. Id. They further agreed that "pursuant to 18 U.S.C. § 3585(b)(2), . . . the time [Mr. Crooker] spent in federal detention in [the firearms case] should be credited against his sentence in this case." [5] Id. Thus, Mr. Crooker's sentence was reduced by the 2,553 days in total he served, first in pre-trial detention on the firearms charge, then based on his unjust firearms conviction on those charges, and finally in pre-trial detention for the threat and toxin charges (following his September 13, 2010 release from prison based on the reversal of his unjust conviction). Pl.'s Mem. 3. As of this opinion, Mr. Crooker is still serving time on that sentence.

---

[4] The exhibit to the plea agreement does not list Mr. Crooker's lawsuit in this court, which was pending at the time that the agreement was negotiated. See Def.'s Opp'n & Cross Mot. Ex. 7. The government has conceded that Mr. Crooker was not required to dismiss this case by the terms of the plea agreement. See Oral Arg. Tr. 51, Sept. 12, 2014, ECF No. 95.

[5] Section 3585(b)(2) provides,

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . .
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

IV.      **Mr. Crooker's Injuries**

Including both his pre-trial detention and the time he served following his firearms conviction, Mr. Crooker spent six years and eighty-two days (or 2,273 days) in prison before his firearms conviction was reversed.  Pl.'s Mem. 13.  Mr. Crooker alleges (and the government does not deny) that during this time he suffered a number of injuries related to his unjust conviction and the conditions of his incarceration, including loss of liberty, emotional distress, negative health consequences, wrongful solitary confinement, and loss of the companionship of his girlfriend.  See generally Pl.'s Mem. 12-18;  Crooker Aff. 12-17, ECF No. 22; Crooker Decl. with Respect to Loss of Consortium 7-10, ECF No. 28.

V.      **Mr. Crooker's Lawsuit in This Court**

On August 12, 2010, Mr. Crooker filed a pro se complaint in this Court seeking damages under 28 U.S.C. § 2513 "to redress [his] unjust conviction and imprisonment" for the firearms charge.  Compl. ¶ 1.  On October 29, 2010, he moved for summary judgment, arguing that "[t]here are no material issues of fact in dispute," and that he "satisfies all elements of 28 U.S.C. § 2513 and is entitled to the full (but meager) compensation cap of $50,000 per year for unjust imprisonment."  Pl.'s Mot. for Summ. J. 1, 8, ECF No. 7.

Mr. Crooker secured legal counsel in March 2011.  See Mot. to Substitute, ECF No. 41. Mr. Crooker's counsel filed a supplemental memorandum in support of Mr. Crooker's motion, clarifying that Mr. Crooker's damages exceed the statutory maximum and consist of medical injuries and neglect, loss of wages, and loss of consortium with his girlfriend, as well as emotional distress, humiliation, and shame for being unjustly convicted.  Pl.'s Mem. 12.  On February 24, 2014, Mr. Crooker filed an additional declaration, claiming that he is entitled to damages for unpaid "forced labor" during his imprisonment for the firearms charge.  Crooker Aff. Regarding BOP Forced Labor, ECF No. 80.

On December 12, 2011, the government filed a brief in opposition to Mr. Crooker's motion as well as a cross motion for summary judgment.  Oral argument was held on April 26, 2012 in front of Judge Wolski.  Judge Wolski requested that the parties file supplemental briefs on issues raised at argument, and the parties filed their briefs on June 29, 2012.

On November 25, 2013, this case was transferred to the undersigned.  Thereafter, the Court requested a second round of supplemental briefing (Order, ECF No. 84, Apr. 11, 2014) and then held oral argument on the pending motions on August 25, 2014.

**DISCUSSION**

I.      **Summary Judgment Standard**

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the

governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party." <u>Id.</u> at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323.  "[W]hen the non-moving party bears the burden of proof on an issue," however, "the moving party can simply point out the absence of evidence creating a disputed issue of material fact.  The burden then falls on the non-moving party to produce evidence showing that there is such a disputed factual issue in the case." <u>Simanski v. Sec'y of Health and Human Servs.</u>, 671 F.3d 1368, 1379 (Fed. Cir. 2012) (citing <u>Celotex</u>, 477 U.S. at 324).

The court must draw all justifiable inferences in favor of the nonmoving party. <u>Anderson</u>, 477 U.S. at 255.  The court must not, however, weigh the evidence or make findings of fact.  <u>See id.</u> at 249.  The court should act with caution in granting summary judgment and deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial.  <u>Id.</u> at 255.

## II.   <u>Jurisdiction and Liability</u>

Pursuant to 28 U.S.C. § 1495, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  Section 2513 of the same title specifies that the damages awarded "shall not exceed . . . $50,000 for each 12-month period of incarceration."  It also sets forth the elements that "any person suing under section 1495 . . . must allege and prove" to establish that he was unjustly convicted of a federal crime.  It provides that, to recover damages, the plaintiff must show that:

> (1)    His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

> (2)    He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513(a).  The statute further provides that "[p]roof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received."  28 U.S.C. § 2513(b).

In this case, it is undisputed that on July 11, 2006, Mr. Crooker was "unjustly convicted" within the meaning of 28 U.S.C. §§ 1495 and 2513 for the offense of transporting a firearm in interstate commerce by a convicted felon.  Thus, the First Circuit subsequently reversed his conviction, finding him guilty of no offense under the firearm statute, and Mr. Crooker has

produced the certificate required by subsection (b), issued by the United States District Court for the District of Massachusetts. See Crooker, 608 F.3d at 97; Pl.'s Mem. Ex. 1 (Certificate of Innocence). He therefore has established this Court's jurisdiction to provide him with a damages remedy for that unjust conviction. Wood v. United States, 91 Fed. Cl. 569, 577 (2009) (holding that compliance with section 2513, including the production of a certificate of innocence, is prerequisite to the jurisdiction of the Court of Federal Claims).

Further, the same two elements set forth in § 2513(a) that establish jurisdiction in this Court in an unjust conviction case also establish a prima facie case of liability against the government. See Bolduc v. United States, 248 F. App'x 162, 164 (Fed. Cir. 2007) ("To establish a prima facie case of unjust conviction and imprisonment, a party need only allege that (1) '[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted . . . as appears from the record' or that he was pardoned for the offense 'upon the stated ground of innocence and unjust conviction'; and (2) he did not actually commit any of the acts charged, and he also 'did not by misconduct or neglect cause or bring about his own prosecution.'"). As explained above, Mr. Crooker has satisfied these elements.

In short, there is no dispute here about liability. Instead, the issues concern the extent to which Mr. Crooker is eligible for an award of damages in light of the unique circumstances of this case, and if so, how to calculate those damages. It is to those issues that the Court now turns.

## III.   **Damages**

In determining the amount of Mr. Crooker's damages, the Court is guided by the basic principle that a plaintiff who has established that he was unjustly convicted is "entitled to recover such damages as [this Court] may find he sustained as a result of his erroneous conviction and imprisonment," Brunner v. United States, 102 F. Supp. 909, 910 (Cl. Ct. 1952), up to the statutory maximum for non-capital sentences of $50,000 per year of incarceration. 28 U.S.C. § 2513(e). As in any case, Mr. Crooker, as plaintiff, bears the burden of providing evidence in support of his damages claim. See Jennings v. Rivers, 394 F.3d 852, 853 (10th Cir. 2005) (calling this principle "axiomatic"); Raishevich v. Foster, 247 F.3d 337, 343 (2d Cir. 2001) (stating that the plaintiff "bore the burden of persuasion with regard to his entitlement to compensatory relief"); Servicios-Expoarma, C.A. v. Industrial Maritime Carriers, Inc., 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them.").

Beyond these basic principles, however, there are complications and issues of first impression presented by the unique circumstances of this case. The first complication arises out of the operation of the sentencing credit statute. Under that statute, because Mr. Crooker's conviction was reversed,[6] the time he spent in prison on the firearms charge was credited, by

---

[6] Under the sentencing credit statute, only time in prison that is not credited against another offense can be used to offset a criminal sentence. 18 U.S.C. § 3585(b). Thus, the result of the reversal of Mr. Crooker's firearms conviction was that the time he had served in prison in

operation of law, against the sentence he received in connection with his guilty plea on the threat and toxin charges.  It is the government's contention that the credit Mr. Crooker received fully compensated him for his unjust conviction and imprisonment, and that no award of further damages pursuant to the unjust conviction statutes would be appropriate.  It further argues that its position in this regard is supported by the reasoning of the First Circuit in Olsen v. Correiro, 189 F.3d 52 (1st Cir. 1999), a case that the Court brought to the parties' attention in its request for supplemental briefing.

Assuming that Mr. Crooker's receipt of a sentencing credit does not negate his entitlement to compensation under the unjust conviction statutes, the second issue raised in this case is whether the time Mr. Crooker spent in pre-trial detention before his conviction is compensable.  Mr. Crooker contends that once a person has been unjustly convicted, he is entitled to the damages he sustained from all periods of imprisonment related to the offense for which he was convicted, including time spent in pre-trial detention.  See Pl.'s Supplemental Br. 7, ECF No. 87, June 2, 2014.  The government, on the other hand, argues that the statute does not contemplate an award of damages for time spent in pre-trial detention.  Def.'s 2d Supplemental Br. 7-13, ECF No. 88, June 2, 2014.  It further argues that the only circumstances under which time spent in pre-trial detention may be compensable is where that time has been credited against the sentence issued in connection with the unjust conviction.  Id. at 13-16.  Those circumstances are not presented here, the government argues, because, as noted above, the time Mr. Crooker spent in pre-trial detention has since been credited against the sentence he received for the threat and toxin charges.  Id. at 15.

The final complication presented in this case is based on the fact that while Mr. Crooker was in prison following his unjust conviction on the firearms charge, he was indicted on the threat and toxin charges.  Therefore, the government argues, and at the very least, even if the sentencing credit does not bar any award of damages at all, Mr. Crooker is not entitled to damages for periods of imprisonment that occurred after his indictment, when he would allegedly have been taken into custody and imprisoned in any event.  Def.'s Opp'n & Cross Mot. 13.  Indeed, the government argues, had Mr. Crooker not already been in prison on the firearms charge, it is likely he would have been imprisoned on the threat and toxin charges well before the indictment had issued, and perhaps for the entire time that he was imprisoned in connection with the firearms charge.  See Def.'s Reply in Supp. of Cross Mot. for Summ. J. 2-3 [hereinafter Def.'s Reply], ECF No. 60, Feb. 10, 2012.

The Court concludes that the material facts of this case are not in dispute and that the parties' cross motions for summary judgment present purely legal issues.  Regarding those issues, as explained below, the Court concludes that Mr. Crooker's receipt of a sentencing credit pursuant to the requirements of 18 U.S.C. § 3585(b)(2) does not divest him of his right to an award of compensatory damages for his unjust conviction and imprisonment pursuant to the unjust conviction statutes.  It further finds that—under the terms of the unjust conviction

---

connection with that offense, both pre-trial and post-conviction, was available to be credited against the sentence on the threat and toxin charges.

statutes—Mr. Crooker is entitled to compensation for the time he spent in pre-trial detention prior to his unjust conviction.  On the other hand, the Court agrees with the government that it is appropriate to cut off Mr. Crooker's entitlement to damages as of the date of his indictment on the threat and toxin charges because that indictment provided a sufficient basis for his continued imprisonment, even had he not been unjustly convicted on the firearms offense.

Thus, the Court finds that Mr. Crooker is entitled to an award of damages that covers the period of time he spent in prison beginning with his pre-trial detention pursuant to his June 23, 2004 arrest on the firearms charge, up through his December 4, 2007 indictment on the threat and toxin charges.  It further finds that Mr. Crooker is entitled to damages up to the statutory cap for this period of incarceration, resulting in an award of $172,465.75.

### A.  The Impact of the Sentencing Credit

The government's primary argument in support of its motion for summary judgment is focused on the fact that—in calculating the sentence on the threat and toxin charges to which Mr. Crooker pled guilty—Mr. Crooker received a credit for the entire time that he served in connection with the firearms charge.  The government argues that by reducing the amount of time that he is now serving on the threat and toxin charges, the credit fully compensated Mr. Crooker for his unjust conviction and imprisonment.  Def.'s Opp'n & Cross Mot. 10-12.  It contends that providing Mr. Crooker an award of damages on top of the sentence credit he has already received would give him a windfall.  Id. at 10.  Mr. Crooker, on the other hand, argues that "[a] sentence credit does not undo the fact that an individual <u>served time while innocent</u> and does not take the place of monetary damages under section 2513."  Pl.'s Mem. 6 (emphasis in original).  The Court agrees with Mr. Crooker.

First, the sentencing credit statute and the unjust conviction statute serve separate purposes.  The sentencing credit statute is part of Title 18 and is designed to "eliminate what would otherwise, in effect, be double punishment where the prisoner has been required to remain in custody on the criminal charges while awaiting trial or sentencing."  <u>Ochoa v. United States</u>, 819 F.2d 366, 371 (2d Cir.1987).  Providing the sentencing credit was necessary to eliminate disparities in sentences between criminal defendants who were able to make bail and those who could not.  <u>See</u> H.R. Rep. No. 86-2058, at 2 (1960).  The Unjust Conviction Statute, on the other hand, "is a remedial act designed by a fair-minded government as a means of at least partially righting an irreparable wrong done to one of its citizens."  <u>United States v. Lyons</u>, 726 F. Supp. 2d 1359, 1365 (M.D. Fla. 2010) (quoting <u>Osborn v. United States</u>, 322 F.2d 835, 839 (5th Cir. 1963)); <u>see also United States v. Keegan</u>, 71 F. Supp. 623, 626 (S.D.N.Y. 1947) (tracing legislative history and purposes of the statute).

Given these distinct purposes, the Court finds unpersuasive the government's contention that the sentence credit fully compensated Mr. Crooker for his unjust conviction and imprisonment and that any additional award of damages would constitute a windfall for him.  For one thing, the government's argument does not account for injuries inflicted by an unjust conviction that are based on something other than the loss of liberty that results from incarceration.  These injuries might include the emotional distress (and economic injury) a plaintiff may suffer as a result of having to defend himself against unjust charges and having his

reputation unfairly besmirched as a result of being found guilty of a crime he did not commit. Cf. Olsen v. Correiro, 189 F.3d 52, 70-71 (1st Cir. 1999) (recognizing that plaintiff who was wrongfully convicted of murder might be entitled to "substantial compensatory damages for injuries associated with the murder trial and conviction," even if damages not available for incarceration).

Further, and in any event, the Court is not persuaded that a loss of liberty that results from a conviction for an offense an individual did not commit and a loss of liberty based on a guilty plea or a legitimate conviction are interchangeable.  In the former instance, the injury and distress inflicted by a loss of liberty is significantly aggravated by the knowledge that the time being served in prison is unlawful and unjustified.[7]  Accordingly, the fact that the sentencing credit allowed Mr. Crooker to reduce the time he would be required to serve in prison for an offense for which he pleaded guilty does not fully compensate him for the injuries he suffered as a result of serving time in connection with an offense that he did not commit.

It also bears noting that there is nothing in either the sentencing credit statute or the unjust conviction statute to suggest that one is exclusive of the other.  The statutory provisions do not reference one another at all.  This absence of statutory language is noteworthy, given that state counterparts to section 2513, which provide for an award of damages based on unjust conviction, explicitly provide for adjustments to damages awards for contingencies similar to those presented here.  For example, Alabama Code § 29-2-161 enumerates five exceptions to the general rule that persons who have been wrongfully incarcerated by the state are entitled to compensation, including an exception precluding an individual who had been awarded compensation and subsequently was convicted of a felony from collecting any unpaid amounts. The Virginia statute carves out a nearly identical exception.  See Va. Code Ann. § 8.01-195.12. By contrast, as noted, the federal statute carves out no exceptions to the rights of individuals unjustly convicted to be compensated for time served pursuant to their unjust conviction.

---

[7] In its earlier briefs, the government contended that the Court of Federal Claims does not have jurisdiction to award damages for injuries such as emotional distress arising out of the unjust conviction on the grounds that this Court lacks "jurisdiction to entertain claims or . . . award money damages based on claims sounding in tort."  Def.'s Opp'n & Cross Mot. 5 (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997)).  At oral argument, however, the government properly withdrew these arguments.  Oral Arg. Tr. 63-64, Sept. 12, 2014.  Unlike the Tucker Act, sections 1495 and 2513 contemplate redress—and give this Court jurisdiction to award damages—for any injury flowing from the unjust conviction, whether or not it "sounds in tort."  Compare § 1495 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." (emphasis added)) with § 1491 (giving this Court jurisdiction over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States," and expressly excluding "cases . . . sounding in tort").  See also Glidden Co. v. Zdanok, 370 U.S. 530, 574 n.42 (1962) (referring to §§ 1495 and 2513 as "specially designated torts"); Roberson v. United States, 129 Ct. Cl. 581, 603 (1954) (finding plaintiff damaged by non-pecuniary losses, such as deprivation of liberty while in confinement, humiliation, estrangement from his family and friends, and a broken engagement due to his incarceration).

Finally, the reasoning of the court of appeals in <u>Olsen v. Correiro</u>, a case arising under 42 U.S.C § 1983, does not counsel in favor of the government's construction of the interplay between the sentencing credit statute and the unjust conviction statutes.  In <u>Olsen</u>, the plaintiff was convicted of murder and sentenced to life imprisonment.  189 F.3d at 55.  His conviction was overturned based on police misconduct, and a new trial was ordered.  <u>Id.</u>  Rather than go through a new trial, however, the plaintiff pleaded nolo contendere to a charge of manslaughter. <u>Id.</u>  In exchange, the prosecutor agreed to recommend a sentence of time served for the manslaughter conviction.  <u>Id.</u>  The court followed the recommendation.  <u>See id.</u>  Thereafter, the plaintiff brought suit under section 1983, seeking damages related to his incarceration on the murder charge.  <u>Id.</u>

The issue before the court of appeals in <u>Olsen</u> was whether, as a matter of law, the plaintiff's nolo plea for the manslaughter charge barred the plaintiff from recovering damages for the time he spent in prison on the murder charge.  The court held that it did, basing its conclusion on "several related doctrines" (189 F.3d at 66), particularly "the established policy of enforcing plea bargains."  189 F.3d at 69.  It reasoned that, "[a]bsent a showing that a plea was in some way constitutionally infirm, parties must be held to the terms of the plea so as to ensure society's interest in the integrity of the system of compromise resolution of criminal charges."  <u>Id.</u>  In that regard, an individual who pleads nolo (or guilty) to a crime is agreeing that both his sentence and his conviction are valid.  <u>Id.</u>  The <u>Olsen</u> court observed that there are "compelling reasons to enforce [a defendant's] bargain: permitting a party who does not contest the Court's authority to punish him to bring a subsequent proceeding in which he is able to claim that his punishment was improper would undermine the finality of plea bargains and jeopardize society's interest in a system of compromise resolution of criminal cases."  <u>Id.</u>  In short, the <u>Olsen</u> court held, a criminal defendant cannot "question the finality of his valid imprisonment by an action for incarceration based damages."  189 F.3d at 70.

<u>Olsen</u>'s reasoning is not applicable here.  While Mr. Crooker entered a guilty plea on the threat and toxin charges, he has consistently denied that he committed the firearms offense, and the court of appeals has vindicated his position.  Further, his receipt of a sentencing credit for time already served on the firearms conviction was not a product of agreement; it occurred by operation of law.  His receipt of the sentencing credit does not imply any acknowledgment on Mr. Crooker's part that the time that he served on the firearms conviction was valid; to the contrary, the reason the time may be credited against his sentence on the threat and toxin charges at all is that it was not lawfully credited to the firearms charge.  Thus, permitting Mr. Crooker to recover damages for his unjust conviction does not present any inconsistency with the plea agreement he entered with the government.

Indeed, the Court notes that—to the extent that the government believed that Mr. Crooker would receive a windfall if he received monetary compensation for his unjust conviction—it could have insisted that Mr. Crooker drop the instant case as part of the plea agreement on the threat and toxin charges.  For reasons that are not entirely clear, however, the government chose not to do so.  In fact, the government has conceded that while the plea agreement did require the dismissal of a number of other pending civil lawsuits filed by Mr. Crooker against government officials, this case was not covered by the plea agreement.  <u>See</u> Oral Arg. Tr. 51, Sept. 12, 2014, ECF No. 95.  Accordingly, the Court rejects the government's argument that either the plea

agreement or the sentencing credit that Mr. Crooker received precludes an award of damages in this case for his unjust conviction.

**B.  Time Spent in Pre-Trial Detention**

The next issue before the Court is whether Mr. Crooker is entitled to recover damages for time he spent in prison after his arrest but before his trial and unjust conviction.  The Court begins with the language of the statute.  Section 1495 provides that this Court may "render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  28 U.S.C. § 1495.  Section 2513, in turn, establishes a cap on the amount of damages the Court can award that is based on the amount of time a plaintiff has spent in "incarceration."  28 U.S.C. § 2513 (limiting damage award to no more than "$100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff").

As is readily apparent, neither section 1495 nor section 2513 makes any distinction between those periods of imprisonment that occur before a conviction and those that are served afterwards.  While section 1495 requires that the plaintiff has been both unjustly convicted and imprisoned in order to be eligible for an award of damages, it does not specify that the imprisonment must follow the unjust conviction in a temporal sense (as the government argues— see Def.'s 2d Supplemental Br. at 10-11).  Nor does it require that the imprisonment be the result of sentencing on the offense for which the plaintiff has been unjustly convicted (and not a consequence of the original arrest and detention for the offense).

Similarly, the language of section 2513, which is entitled "unjust conviction and imprisonment," states that "[t]he amount of damages awarded shall not exceed $100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff."  28 U.S.C. § 2513(e).  Again, this provision does not make distinctions based on whether the "period of incarceration" occurred pre-trial or was instead a result of a sentence pronounced in connection with the unjust conviction.

The legislative history of the Act provides no indication that Congress intended that plaintiffs would not be able to recover damages for injuries arising out of pre-trial detention.  In fact, a finding that Congress did intend to authorize such damages is supported by the statement of the architect of the original legislation which was proposed in 1912, Professor Edwin M. Borchard, then Law Librarian of Congress.  He explicitly stated that the right granted under that original bill to "indemnification for the pecuniary injury [a plaintiff] has sustained through his erroneous conviction and imprisonment" would "cover the injury during the whole period of detention, both before and after trial."  S. Doc. No. 63-974 at 31 (1913).  Professor Borchard's views are entitled to weight, as both the Senate and Conference Committee reports on the bill that was ultimately enacted in 1938 specifically quote him at some length in discussing the justification for the legislation (although they do not quote his observations regarding injuries arising out of pre-trial detention).  S. Rep. No. 75-202 at 2 (1937); H.R. Rep. No. 75-2299 at 3 (1938).

Nonetheless, as the government points out (Def.'s 2d Supplemental Br. at 11), the original bill that Professor Borchard drafted in 1912 was substantially amended by both the Senate and the House of Representatives prior to its ultimate enactment in 1938. See Act of May 24, 1938, 52 Stat. 438 (1938) (codified at 18 U.S.C. §§ 729-23 (1940)); see generally Keegan, 71 F. Supp. at 626-36 (detailing the legislative history of the original Act). Thus, the 1938 bill provided that "any person who, having been convicted of any crime or offense against the United States and having been sentenced to imprisonment and having served all or any part of his sentence, shall hereafter, on appeal or on a new trial or rehearing" be subsequently found innocent of the crime for which he was convicted, may "maintain suit against the United States in the Court of Claims for damages sustained by him as a result of such conviction and imprisonment." 52 Stat. 438. Unlike the current law, which sets a cap on damages based on periods of "incarceration," the original law provided that a plaintiff who served all or part of his sentence could file suit, with a total cap on damages of $5000, without regard to the amount of time an individual was imprisoned. Id. at § 4.

The Act was further amended in 1948, Act of June 25, 1948, 62 Stat. 941, 978 (1948) (codified at 28 U.S.C. §§ 1495, 2513 (1950)). The 1948 Act resulted in the language that is contained in the current law, removing the unjust conviction statute from Title 18, and reallocating its provisions into two sections of Title 28. Id. The $5000 overall cap on damages, however, remained in place. Id.

The Act was amended most recently in 2004. Justice for All Act of 2004, Pub. L. 108-405, Title IV, § 431, 118 Stat. 2293 (Oct. 30, 2004). The purpose of the amendment was to increase the amount of damages available to unjustly convicted plaintiffs above the $5000 cap, which had remained unchanged since the law was enacted in 1938. S. Rep. 107-315 at 35 (2002). Thus, the Senate Report on the version of the bill that was ultimately enacted noted that:

> Society bears a debt to individuals who have been convicted and incarcerated for crimes they did not commit. How are they compensated for all the years they spent behind bars, sometimes on death row, for all the lost wages, for all the pain and suffering? In most cases, there is no compensation, or at least not much. Under current Federal law, as enacted more than 60 years ago, the Federal Government pays a miserly $5,000 in cases of unjust imprisonment, regardless of the length of time served. See act of May 24, 1938, ch. 266, 1–4, 52 Stat. 438. This cap is substantially lower than comparable limits established by States that have adopted statutes to compensate the wrongfully imprisoned.

Id. Further, the Report noted:

> Putting one's life back together after [being unjustly convicted and imprisoned] is difficult enough, even with financial support. Without such support, a wrongly convicted person might never be able to establish roots that would allow him to contribute to society. To help repair the lives that are shattered by wrongful convictions, the bill raises the Federal cap on compensation, and urges States to follow suit—at least in cases where the wrongly convicted person was sentenced to death. The new Federal cap proposed by the bill as reported is significantly

lower than the cap proposed by the bill as introduced, and significantly lower than many Members of the Committee think appropriate.  It is very least that the Congress should do.

Id. at 37.

As a result of the 2004 amendments, a new cap was established that was based on the amount of time that the unjustly convicted plaintiff was "incarcerat[ed]."  The legislative history does not contain any indication that Congress intended the phrase "incarceration" to be limited to periods of imprisonment that were imposed as a result of the unjustly convicted plaintiff's sentence.  Indeed, the Senate Report that discusses the rationale for raising the cap explicitly cites as an example of injustice the case of a Walter McMillian, who "was convicted of a capital offense and imprisoned for 6 years, including being sent to Alabama's death row for 13 months before his capital trial."  Id.

Because neither the language nor legislative history of the unjust conviction statutes conclusively addresses whether periods of pre-trial detention are compensable, the Court turns for assistance to two applicable canons of statutory interpretation.  The first is the well-established principle requiring that a court construe a remedial statute liberally to effectuate its purposes.  Samish Indian Nation v. United States, 419 F.3d 1355, 1367 (Fed. Cir. 2005) (citing Chisom v. Roemer, 501 U.S. 380, 403 (1991); Smith v. Brown, 35 F.3d 1516, 1525 (Fed. Cir.1994), superseded on other grounds by 38 U.S.C. § 7111).[8]  The other principle at play in this case, upon which the government places its reliance, is the doctrine of sovereign immunity, by which the United States, "as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941).  As the Supreme Court has held, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."  Lehman v. Nakshian, 453 U.S. 156, 161 (1981) (quoting Soriano v. United States, 352 U.S. 270, 276 (1957)); accord United States v. King, 395 U.S. 1, 4 (1969) (waiver of sovereign immunity "cannot be implied but must be unequivocally expressed").  See also Orlando Food Corp. v. United States, 423 F.3d 1318, 1320-21 (Fed. Cir. 2005) (statutes waiving the sovereign immunity of the United States should be construed narrowly); Chancellor Manor v. United States, 331 F.3d 891, 898 (Fed. Cir. 2003) (same); Vincin v. United States, 468 F.2d 930, 933 (Ct. Cl. 1972) (same).

---

[8] The unjust conviction statute is clearly remedial in nature.  Osborn v. United States, 322 F.2d 835, 839 (5th Cir. 1963) (quoting McClean v. United States, 73 F. Supp. 775, 778 (W.D.S.C. 1947) (unjust conviction statute "is a remedial act designed by a fair-minded government as a means of at least partially righting an irreparable wrong done to one of its citizens"); Roberson v. United States, 124 F. Supp. 857, 860 (Ct. Cl. 1954).  See also Lyons v. United States, 99 Fed. Cl. 552, 563 (2011) (noting the remedial purposes of the 2004 amendments raising the cap on damages).  "It has the beneficent purpose of attempting to compensate, as well as money can compensate for such an injury, the plaintiff for loss of his liberty through an error on the part of his government."  United States v. Lyons, 726 F. Supp. 2d 1359, 1365 (M.D. Fla. 2010) (quoting Osborn, 322 F.3d at 839).

For purposes of the unjust conviction statutes, "the phrasing of the Act and its legislative history," limiting the issuance of certificates to persons who can establish their innocence, "proclaim the care with which its framers guarded against opening wide the door through which the treasury may be assailed by persons erroneously convicted." United States v. Brunner, 200 F.2d 276, 280 (6th Cir.1952); United States v. Graham, 608 F.3d 164, 171-72 (4th Cir. 2010) (explaining that Congressional intent to limit claims on the treasury met by providing that only the "truly innocent" would receive a section 2513 certificate); Betts v. United States, 10 F.3d 1278, 1283 (7th Cir.1993) (same); United States v. Graham, 595 F. Supp. 2d 681, 684 (S.D.W.V. 2008) (describing "rigorous burden" plaintiffs must meet in order to invoke the court's jurisdiction); see also Moore v. United States, 230 Ct. Cl. 819, 820 (1982) (per curiam) (holding that 28 U.S.C. § 2513 "must be strictly construed" and that "[t]o be successful under this statute a plaintiff must furnish . . . a copy of his pardon on the explicitly stated grounds of innocence and unjust conviction, or a certificate of the convicting court that his conviction had been reversed on the grounds of his innocence" and that "[n]o other evidence may be considered under the statute").

In this case, Mr. Crooker's submission of a certificate of innocence satisfies the statute's jurisdictional requirements and triggers a waiver of sovereign immunity. Beyond that, this Court must determine the scope of the waiver of sovereign immunity "by reference to underlying congressional policy." Franchise Tax Bd. v. United States Postal Serv., 467 U.S. 512, 521 (1984). In that regard, the Court takes note of the Supreme Court's admonition in Block v. Neal, 460 U.S. 289, 298 (1983), that "[t]he exemption of the sovereign from suit involves hardship enough where consent has been withheld," and that the Court should not "add to its rigor by refinement of construction where consent has been announced." See also Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955) (Frankfurter, J.) (holding that a court should not act as "self-constituted guardian of the Treasury [and] import immunity back into a statute designed to limit it"); see also Ford Motor Co. v. United States, 768 F.3d 580, 586 (6th Cir. 2014) (observing that sovereign immunity is a jurisdictional doctrine that "bars the courts from adjudicating certain types of claims made against the sovereign; it does not require the courts to resolve all ambiguities in substantive statutory provisions in the government's favor").

As noted above, Congress's purpose in enacting the unjust conviction statutes was to make whole innocent persons who have suffered a loss of liberty because of errors or prosecutorial overreach by the government. The purpose of the 2004 amendments in particular, which raised the cap on damages, was to more fairly compensate those to whom "society bears a debt" because they "have been convicted and incarcerated for crimes they did not commit." S. Rep. 107-315 at 35. Denying an individual compensation for time spent in pre-trial detention in connection with charges of which he is innocent frustrates these purposes. Thus, it bears emphasis again that damages are only available under the unjust conviction statutes when an individual has been certified as innocent of the offense for which he has been imprisoned. The only way to make such an innocent plaintiff whole is by providing damages for all periods of imprisonment served as a result of the offense of which he was unjustly convicted.

Indeed, the government's construction of the unjust conviction statutes—which would not permit an award of damages for periods of imprisonment that preceded the unjust conviction—would have harsh results that are clearly inconsistent with the statute's remedial

purposes.  Perhaps recognizing as much, in its briefs, the government attempts to construct an alternative justification for awarding damages for periods of pre-trial detention based on the sentencing credit statute.  It contends that damages for periods of time spent in pre-trial detention might be appropriate in cases where such periods have been credited against an unjustly convicted plaintiff's sentence (although it would not count such periods where, as here, they are subsequently recredited against another sentence).  Def.'s 2d Supplemental Br. 13-15.  Thus, it argues, "when applied to Unjust Conviction Act claims, section 3585 expands the compensable 'term of imprisonment' to include pre-trial detention that has been credited against the unjust conviction."  Id. at 15.

The Court finds this argument artificial and unpersuasive.  As described above, in the Court's view, the operation of the sentencing credit statute has no bearing on the extent to which a plaintiff is entitled to recover damages under the unjust conviction statute.  Instead, the Court looks to the unjust conviction statutes themselves to discern whether Congress intended pre-trial periods of imprisonment to be compensable.  Thus, the federal sentencing credit statute was not enacted until 1960, decades after the unjust conviction statutes became law.  Endorsing the government's argument would require the Court to accept the premise that the Congress that originally enacted the unjust conviction statutes did not intend to compensate innocent plaintiffs who were unable to post bail for periods of time which they spent in prison awaiting trial on charges of which they were innocent.

In short, the Court views as irrelevant the fact that the periods of time Mr. Crooker spent in pre-trial detention were ultimately credited against the sentence imposed pursuant to Mr. Crooker's guilty plea on the threat and toxin charges.  The Court concludes that the unjust conviction statutes authorize an award of damages for all periods of incarceration related to the offense for which the plaintiff was unjustly convicted, including periods of time spent in prison awaiting trial.

## C.  The Effect of Mr. Crooker's Indictment on the Threat Charges

As described above, under the unjust conviction statutes, damages are available for periods of imprisonment that are related to the offense for which the plaintiff was unjustly convicted.  Mr. Crooker's entitlement to damages thus begins on the date he was arrested on the firearms charge (June 23, 2004).   The government argues, however, that even had Mr. Crooker never served time based on the firearms charge, he would have been in prison anyway as of the day of his arrest on June 23, 2004 (or shortly thereafter) because of the toxic substances seized from his home that day and because of the threat offense he committed a few weeks later while in pre-trial detention.  Def.'s Reply 2.  Therefore, according to the government, Mr. Crooker is entitled to no damages for his entire period of incarceration on the firearms charge.  Id.  At the very least, the government contends, Mr. Crooker would have been incarcerated beginning in December 2007, when he was indicted on the threat and toxin charges, and he should not be awarded damages for prison time he served past that date.  Def.'s Opp'n & Cross Mot. 13.

The Court rejects the government's argument that Mr. Crooker should not receive compensation for the periods of time he was incarcerated after his arrest on the firearms charge but prior to his indictment on the threat and toxin charges.   The investigation related to the latter

charges was apparently lengthy and complicated, as no indictment was issued until December 4, 2007.  This Court has no authority or basis for determining whether or not the government had probable cause to arrest and detain Mr. Crooker on the toxin and threat offenses prior to the issuance of the indictment.  It therefore must assume that Mr. Crooker would not have been imprisoned before December 4, 2007 but for his arrest and unjust conviction on the firearms charges.

On the other hand, the Court agrees with the government that Mr. Crooker's entitlement to damages for his unjust conviction should not include periods of incarceration after his indictment.  It bases that conclusion on principles of tort law, which require a plaintiff seeking compensatory damages to prove that the defendant's tortious conduct was the "but for" cause of his injuries, and on similar principles drawn from McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 359 (1995), and its progeny, which have examined analogous remedial issues arising under federal anti-discrimination laws.

In McKennon, the Court examined the impact of after-acquired evidence of an employee's misconduct on an employer's liability for a discriminatory discharge.  Id. at 356.  The defendant-employer in the case conceded for purposes of summary judgment that it had terminated the plaintiff  based on her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2012).  McKennon, 513 U.S. at 356.  The issue before the Supreme Court was whether the plaintiff was barred from any relief under the ADEA based on evidence of acts of misconduct that her employer discovered after her discharge, in the course of litigating her discrimination claims.  Id.  Specifically, during the plaintiff's deposition she revealed that, while still employed, she had copied and taken home certain confidential documents in violation of her employer's policies.  Id. at 355.

The Court assumed for purposes of deciding the case that the misconduct revealed at the deposition "was so grave that McKennon's immediate discharge would have followed its disclosure in any event," but held that the after-acquired evidence of misconduct did not entirely preclude her from recovering damages under the ADEA for her unlawful discharge.  Id. at 356.  It ruled, however, that it was relevant to consider her misconduct in determining her entitlement to certain remedies otherwise available under the statute.  Id. at 360-61.  Thus, it concluded that neither reinstatement nor front pay would be appropriate remedies in the case before it because "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds."  Id. at 362.

The Court's approach in McKennon is consistent with general principles of tort law.  Such principles require that a plaintiff seeking damages prove that his injury would not have occurred "but for" the defendant's tortious act.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2525 (2013) (citing Prosser and Keaton on the Law of Torts, § 41 at 265 (5th Ed. 1984) (noting that a defendant's action is not a cause of an event "if the particular event would have occurred without it")).  In the context of after-acquired evidence cases like McKennon, once an employer possesses information that provides it with an independent and lawful basis for discharging an employee, the discriminatory act is no longer the "but for" reason why the plaintiff is no longer in the defendant's employ.  513 U.S. at 360-61.  Further, consideration of the plaintiff's wrongdoing is needed "to take due account of the lawful prerogatives of the

employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing."  Id. at 362.

    The Court finds these principles instructive here.  In this case, Mr. Crooker was indicted on the threat and toxin charges in December of 2007, while still imprisoned pursuant to the sentence he received on the firearms conviction.  By analogy to McKennon, the Court views the date of Mr. Crooker's indictment as equivalent to the date on which an employer discovers evidence of an employee's wrongdoing that is sufficient to justify the employee's immediate removal.  Thus, the indictment established the existence of probable cause to believe that Mr. Crooker committed the crimes charged in the indictment, supplying a legal basis to take him into custody immediately.  United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 400 (1935) (holding that an indictment fulfills the requirements of the Fifth Amendment, establishes probable cause, and is itself authority to bring the accused to trial).  In fact, the government did immediately take Mr. Crooker into custody based on the indictment, after his firearms conviction was reversed.

    Given these circumstances, and applying the principles outlined in McKennon and its progeny (as well as general principles of causation in tort law), the Court concludes that it would be inappropriate to award Mr. Crooker damages for periods of imprisonment that occurred after his indictment on December 4, 2007.  Thus, after the indictment, the arrest on the firearms offense and the unjust conviction were no longer the but-for cause of Mr. Crooker's imprisonment.  Further, and again consistent with the rationale of McKennon, equitable principles suggest that the liability of the United States should be cut off at the point of indictment, in recognition of its prerogative to then immediately arrest and incarcerate Mr. Crooker.[9]

## D.  Award

    Having determined the period of imprisonment for which Mr. Crooker is entitled to compensation, the Court turns now to the amount of damages that Mr. Crooker is entitled to recover.  As provided in section 2513, Mr. Crooker can recover no more than $50,000 per year of incarceration.  At oral argument, counsel for the government conceded that "it would be hard

---

[9] In an early brief, Mr. Crooker argued that liability should not be cut off based on his indictment because "had [he] not been wrongfully detained in the first place, he would not have had any cause to send communications to the U.S. Attorney's office."  Pl.'s Resp. 9, ECF No. 58, Jan. 16, 2012.  The Court notes, however, that the indictment charges Mr. Crooker with serious acts of criminal conduct that pre-dated his arrest on the firearms charge: possession of illegal toxins.  Further, the Court declines to adopt a theory of causation that relieves Mr. Crooker of responsibility for threatening government officials on the purported grounds that his action was provoked by the arrest which preceded his unjust conviction.  Cf. Decker v. Gibson Prods. Co. of Albany, 679 F.2d 212, 215 (11th Cir. 1982) (noting that, in general, an intervening criminal act is not a foreseeable result of negligence); Precision Window Mfg. v. NLRB, 963 F.2d 1105, 1108-1109 (8th Cir. 1992) (employee who threatened to kill supervisor after he was wrongfully discharged for engaging in union activity not entitled to re-instatement on the grounds that illegal firing provoked him to make the threat).

to imagine a circumstance" in which someone's liberty for a year could ever be worth less than $50,000 and that, if the Court found that the sentence credit did not bar an award of damages, then Mr. Crooker "would very well be" entitled to an award of $50,000 per year of imprisonment.  Oral Arg. Tr. 53-54, Sept. 12, 2014.

The Court agrees.  In the Court's view, an award of well over $50,000 is required to adequately compensate any individual who has been required to defend himself against meritless charges of criminal misconduct, expend the effort to appeal an unjust conviction, and serve a year in prison for a crime that he did not commit.  The Court further finds that an award of at least $50,000 per year is appropriate regardless of a plaintiff's prior criminal record, or the extent to which he can be characterized as already familiar with the hardships of imprisonment.[10]

Even if the Court were to offset against any award the value of the time that Mr. Crooker was provided as a credit against the sentence he received for the threat and toxin charges, the Court believes that no less than $50,000 per year in compensatory damages would be appropriate because, as described above, there is a fundamental difference between time served in prison as a guilty man, and time served for a crime one did not commit.  Further, it is undisputed in this case that Mr. Crooker suffered a series of additional injuries, including emotional distress and physical pain caused by medical conditions for which he did not receive treatment while in prison, occurring during the period for which the Court has found him eligible for damages.

As noted, the statutory maximum is $50,000 per twelve-month period of imprisonment—or approximately $136.99 per day of imprisonment.  The Court has found Mr. Crooker entitled to damages up to this cap based on his imprisonment between June 23, 2004 and December 4, 2007

---

[10] In Brunner v. United States, 102 F. Supp. 909 (Cl. Ct. 1952), the Court of Claims found that an unjustly convicted plaintiff was entitled to only negligible damages ($500—or 10% of the then-applicable statutory cap of $5000) for the eight months he spent in prison.  The court based its decision on the fact that Brunner was a "chronic law violator" who had spent all or part of every one of the twelve years preceding his unjust conviction in prison.  Id. at 910.  The court inferred that Brunner's continued violations of the law showed that he "would just as soon be in prison as out" and it found that "the deprivation of liberty, priceless as it is to most of us, seems to have meant little to him."  Id. at 911.

In its early briefs, the government, citing Brunner, argued that Mr. Crooker's extensive criminal history render him similarly undeserving of any award.  Def.'s Opp'n & Cross Mot. 5-12.  At oral argument, however, the government properly withdrew this argument.  Oral Arg. Tr. 53-54, Sept. 12, 2014.  On the one hand, the Court acknowledges the human temptation to allow the calculation of damages to be affected by Mr. Crooker's history of criminal misconduct (particularly the threat and toxin offenses which he has pled guilty to committing shortly before and after he was arrested on the firearms charge).  At the same time, the Court does not subscribe to the perhaps anachronistic sentiment reflected in the Brunner decision that any individual—including one who routinely commits criminal acts—"would just as soon be in prison as out." The Court, therefore, does not give Mr. Crooker's criminal record any weight in evaluating the extent to which he was damaged by his wrongful conviction and imprisonment.

(1,259 days).  Accordingly, it awards Mr. Crooker damages in the amount of $172,465.75 for his unjust conviction and imprisonment.

## CONCLUSION

Based on the foregoing, Mr. Crooker's motion is **GRANTED IN PART** and **DENIED IN PART**, and the government's motion is also **GRANTED IN PART** and **DENIED IN PART**.  Moreover, Mr. Crooker shall be awarded $172,465.75.  The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge